## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION

RADIANT GLOBAL LOGISTICS, INC.,
a Washington corporation,

      Plaintiff,

v.

CHARLES FURSTENAU, JR., an
individual and Michigan resident, and
BTX AIR EXPRESS OF DETROIT,
LLC, a Connecticut limited liability
company,

      Defendants.

Case No. 2:18-cv-12783

Hon. Paul D. Borman

---

Patrick F. Hickey (P36648)
Benjamin W. Jeffers (P57161)
Stefanie R. Reagan (P80334)
HICKEY HAUCK BISHOFF
& JEFFERS, PLLC
*Attorneys for Plaintiff*
One Woodward Avenue, Suite 2000
Detroit, MI  48226
313.964.8600
phickey@hhbjlaw.com
bjeffers@hhbjlaw.com
sreagan@hhbjlaw.com

                      /

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Radiant Global Logistics, Inc., a Washington corporation
(hereinafter, "Radiant"), by its attorneys, Hickey Hauck Bishoff & Jeffers, PLLC,
and pursuant to Fed. R. Civ. P. 65, M.C.L. §445.1903, and 18 U.S.C. §1836 *et seq*

moves this Court for a preliminary injunction against Defendants, Charles Furstenau, Jr. ("Furstenau") and BTX Air Express of Detroit, LLC ("BTX") (hereinafter, collectively referred to as "Defendants"), in the form attached to this Brief as **Exhibit A**. In support, Plaintiff states as follows:

1.      Radiant's Verified Complaint and this motion for preliminary injunction seek to prevent and redress the continued harm caused by the sudden resignation of Furstenau, the former General Manager of Radiant's Detroit based operations, on Friday, August 24, 2018, and his immediate assumption of the same role of manager with a newly formed Detroit based operations of BTX, a direct competitor of Radiant

2.      Before Furstenau's sudden resignation, he misappropriated Radiant's highly confidential and proprietary information and unlawfully recruited three key Radiant employees for employment at the newly established operations of BTX. Immediately after joining BTX, Furstenau and these former Radiant employees began to use Radiant's confidential and proprietary information to replicate the services and pricing offered by Radiant and solicit and convert Radiant's long term customers and suppliers to BTX.

3.      Based on the evidence gathered thus far, Radiant is certain to succeed on the merits of its breach of fiduciary duty claim against Furstenau and its misappropriation of trade secrets claim against Furstenau and BTX.

4.      The balance of harms in this case weighs firmly in favor of Radiant to support issuing injunctive relief. The irreparable harm Radiant is suffering in the form of the loss of confidentiality of its Confidential Information, the loss of its advantageous competitive position in the logistics and supply chain management industry, the loss of customer relationships and goodwill, and the loss of key employees in its Detroit operations far outweighs any potential harm to Defendants. Specifically, preventing Defendants from profiting from Furstenau's breach of his fiduciary duties to Radiant, requiring them to keep confidential Radiant's trade secrets and other Confidential Information; and ordering them to discontinue their use of Radiant's highly Confidential Information and return the same to Radiant will prevent further irreparable harm to Radiant.  The idea that the Defendants can somehow cure their bad acts by simply returning what they took and/or not use Radiant's Confidential Information falls woefully short of protecting Radiant's interest in the misappropriated trade secrets and Confidential Information. The misappropriated trade secrets and Confidential Information taken by Furstenau and possessed by him and the other former Radiant employees cannot be unlearned or cognitively quarantined in the current situation. Indeed, Furstenau and the former employees are bound to use and BTX is bound to benefit from the misappropriated trade secrets and Confidential Information in soliciting Radiant's customers.  In order to truly protect Radiant's interest in this matter, the Defendants must be

3

enjoined for a period of time from soliciting those customers that are the subject of the misappropriated trade secrets and Confidential Information.

5. A preliminary injunction is in the interest of the public, which supports protection of trade secrets, and compliance with Michigan and federal statutes.

6. Accordingly, Radiant respectfully moves this Court to enter an order:

a. Enjoining and prohibiting Furstenau and anyone acting in concert with him (including the three former Radiant employees hired by BTX since Furstenau left Radiant), are enjoined and prohibited from directly or indirectly calling upon, soliciting or conducting business with any entity that was a customer of Radiant during the last 12 months that Furstenau was employed Radiant;

b. Enjoining and prohibiting Defendants and anyone acting in concert with them are enjoined and prohibited from using, disclosing, sharing, copying, or accessing any Radiant confidential information, which includes Radiant information and data as to the following: (i) customer lists and rate information, (ii) shipment by shipment details as to the revenues and margins from various customer accounts across certain routes, (iii) information regarding Radiant's internal implementation of new enterprise management software and processes, (iv) Radiant's proprietary operational practices of crafting carrier, routing and pricing solutions for customers, (v) information regarding skills, performance and compensation of Radiant employees, and (vi) Radiant revenue and profitability data

c. Enjoining and prohibiting Furstenau and anyone acting in concert with him (including the three former Radiant employees hired by BTX since Furstenau left Radiant), are enjoined and prohibited from directly or indirectly soliciting, recruiting or hiring any additional Radiant employees; and

d. Ordering Furstenau to make his personal computer(s), cell phone, portable storage devices and personal email and cell phone account(s) available for imaging and/or analysis.

4

Concurrence to the relief requested herein was requested of counsel for Defendants, but refused.

Dated:  September 14, 2018          HICKEY HAUCK BISHOFF & JEFFERS, PLLC

By:    */s/ Patrick F. Hickey*
  Patrick F. Hickey (P36648)
  Benjamin W. Jeffers (P57161)
  Stefanie R. Reagan (P80334)
  *Attorneys for Plaintiff*
  One Woodward Avenue, Suite 2000
  Detroit, MI  48226
  313.964.8600
  phickey@hhbjlaw.com
  bjeffers@hhbjlaw.com
  sreagan@hhbjlaw.com

5

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RADIANT GLOBAL LOGISTICS, INC.,
a Washington corporation,

      Plaintiff,

v.

CHARLES FURSTENAU, JR., an
individual and Michigan resident, and
BTX AIR EXPRESS OF DETROIT,
LLC, a Connecticut limited liability
company,

      Defendants.

Case No. 2:18-cv-12783

Hon. Paul D. Borman

_____

Patrick F. Hickey (P36648)
Benjamin W. Jeffers (P57161)
Stefanie R. Reagan (P80334)
HICKEY HAUCK BISHOFF
& JEFFERS, PLLC
Attorneys for Plaintiff
One Woodward Avenue, Suite 2000
Detroit, MI  48226
313.964.8600
phickey@hhbjlaw.com
bjeffers@hhbjlaw.com
sreagan@hhbjlaw.com
_____/

## PLAINTIFF'S BRIEF IN SUPPORT OF
## MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES.................................................................................. ii

STATEMENT OF ISSUES PRESENTED ............................................................ iv

STATEMENT OF CONTROLLING AUTHORITY ............................................. v

INTRODUCTION ................................................................................................. 1

STATEMENT OF FACTS..................................................................................... 2

    A.   Radiant's Business and It's Detroit Market............................................. 2

    B.   BTX is a Competitor of Radiant that did not Operate in Detroit Prior to Defendants' Misappropriation ............................................................... 4

    C.   Furstenau's Breaches of Fiduciary Duties and Misappropriation and Use of Radiant's Trade Secrets.................................................................... 4

    D.   Furstenau's Recruitment of Key Strategic Employees of Radiant............ 8

ARGUMENT ...................................................................................................... 12

    I.    Standard of Review ...................................................................... 12

    II.   The Court Should Grant Radiant's Requested Injunctive Relief................ 13

    A.   Radiant has a strong likelihood of success on the merits ........................ 13

    B.   Radiant would suffer irreparable injury absent the requested relief ....... 19

    C.   A preliminary injunction will only affect the parties to this litigation.... 23

    D.   The public interest would be served by issuance of an injunction.......... 24

CONCLUSION ................................................................................................... 25

CERTIFICATE OF SERVICE............................................................................. 26

i

# TABLE OF AUTHORITIES

Cases

*Actuator v. Chinavare*, 2011 WL 6004068, at *3-5 (Mich. Ct. App. Dec. 1, 2011) ............................................................................................... 22

*Aerospace AM., Inc. v. Abatement Techs.*, 738 F.Supp. 1061, 1069 (E.D. Mich. 1990) ....................................................................................... 15

*American Furukaw, Inc. v. Hossain*, 2016 WL 3444079 (E.D. Mich., June 23, 2016) ..................................................................................... v, 14

*Basicomputer*, 973 F2d 507, 511 (6th Cir. 1992) ............................................. 18, 19

*Bodner*, 2008 WL 2704862, at *12 ............................................................... 24

*Brake Parts, Inc v. Lewis*, 443 Fed. Appx. 27, 32 (CA 6, 2011) ............................ 22

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) ........................................................ 11, 13, 24

Defend Trade Secrets Act, 18 U.S.C. ............................................................. v

*Giasson Aerospace Science, Inc. v. RCO Engineering, Inc.*, 680 F.Supp.2d 830, 844 (E.D. Mich. 2010) ...................................................................... 16

*Golden v. Kelsey–Hayes*, 73 F.3d, 648 653 (6th Cir. 1996) ................................. 12

*Hamad v. Woodcrest Condo. Ass'n.*, 328 F.3d 224, 230 (6th Cir. 2003) .............. 12

*Hayes-Albion v. Kuberski*, 108 Mich. App. 642, 651, 311 N.W.2d 122, 127 (1981) .................................................................................................... 16

*Henkel Corp. v. Cox*, 386 F.Supp.2d 898, 904 (E.D. Mich. 2005) ........................ 23

*J. Rettenmaier USA LP v. Bodner*, 2008 WL 2704862, *7 (W.D. Mich. July 9, 2008) ................................................................................................. 13

*Kelly Servs., Inc. v. Noretto*, 495 F.Supp.2d 645, 655 (E.D. Mich. 2007) ...... passim

*Lowry Computer Prods. v. Head*, 984 F. Supp. 1111, 1116 (E.D. Mich. 1997) ................................................................................................. 19, 20

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Ran*, 67 F.Supp.2d 764, 780 (E.D. Mich. 1999) ................................................................................. 23

*Michigan Bell Tel. Co. v. Engler*, 257 F.3d 587, 599 (6th Cir. 2001) .................... 18

Michigan Uniform Trade Secret Act, MCL §445.1901 *et seq.* ............................... v

*MLive Media Grp. v. Webber*, 2014 WL 4374376 (E.D. Mich. Sept. 4, 2014) ......................................................................................... v, 17, 21

*Nedschroef Detroit Corp. v. Bemas Enterprs., LLC*, 106 F.Supp.3d 874 (E.D. Mich. 2015) ......................................................................... v, 14, 17, 21

*Petroleum Enhancer, LLC v. Woodward*, 690 F.3d 757, 765–66 (6th Cir.2012) ................................................................................................. 13, 14

*Red D Freight, Inc. v. Sexton*, 2017 WL 4818898 (Mich. Ct. App. Oct. 24, 2017) .................................................................................................. v, 18

*S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) ........................................................................................ 12

*Stryker Corp. v. Ridgeway*, 2015 WL 8759220 (W.D.Mich. Dec. 14, 2015)..... v, 13

*Superior Consultant Co. v. Bailey*, 2000 WL 1279161 (E.D. Mich. Aug. 22, 2000) ........................................................................................ 16

*Superior Consulting Co., Inc. v. Walling*, 851 F.Supp. 839, 848 (E.D. Mich. 1994) ........................................................................................ 22

*Teadt v. Lutheran Church Mo. Synod*, 237 Mich.App. 567, 580–81, 603 N.W.2d 816 (1999) ........................................................................................ 13

*Univ. of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834, 68 L. Ed. 2d 175 (1981) ........................................................................................ 11

Statutes

18 U.S.C. §1839(3) ........................................................................................ 16, 17

18 U.S.C. §1839(5) ........................................................................................ 15, 17

MCL §445.1901 ........................................................................................ 15

MCL §445.1902(a)-(b) ........................................................................................ 16

MCL §445.1902(b) ........................................................................................ 15

MCL §445.1902(d) ........................................................................................ 16

MCL §445.1903(1) ........................................................................................ 15, 19

MCL 445.1901 ........................................................................................ 15

Rules

Fed. R. Civ. P. 65 ........................................................................................ v

LCR 7.1(d)(2) ........................................................................................ iv

## STATEMENT OF ISSUES PRESENTED

Pursuant to E.D. Mich. LCR 7.1(d)(2), Plaintiff identifies the following issues presented by its Motion:

1.     Whether Defendants should be enjoined and prohibited from using or disclosing any of Radiant's trade secrets and other highly confidential and proprietary information regarding the identity of customers, the historical volumes and shipping patterns of customers, the optimal routing and load configurations, the identity and pricing of carriers/suppliers, and the pricing and costs of Radiant; and

2.     Whether Radiant's trade secrets and highly confidential and proprietary information should be protected by enjoining Defendants from soliciting or calling upon Radiant's customers, suppliers and employees; and

3.     Whether Defendants should be required to return any and all confidential and proprietary information of Radiant that was misappropriated by Defendant Furstenau, and any hard or electronic copies of the same.

**To each, Radiant answers "Yes."**

## STATEMENT OF CONTROLLING AUTHORITY

Pursuant to Local Rule 7.1(d)(2), Plaintiff states that the following authorities are the controlling or most appropriate authorities for the requested relief:

### Statutes / Court Rules

Fed. R. Civ. P. 65

Michigan Uniform Trade Secret Act, MCL §445.1901 *et seq.*

Defend Trade Secrets Act, 18 U.S.C. §1836 *et seq.*

### Cases

*Stryker Corp. v. Ridgeway*, 2015 WL 8759220 (W.D.Mich. Dec. 14, 2015)

*Nedschroef Detroit Corp. v. Bemas Enterprs., LLC*, 106 F.Supp.3d 874 (E.D. Mich. 2015)

*American Furukaw, Inc. v. Hossain*, 2016 WL 3444079 (E.D. Mich., June 23, 2016)

*Red D Freight, Inc. v. Sexton*, 2017 WL 4818898 (Mich. Ct. App. Oct. 24, 2017)

*Kelly Servs., Inc. v. Noretto*, 495 F.Supp.2d 645, 655 (E.D. Mich. 2007)

*MLive Media Grp. v. Webber*, 2014 WL 4374376 (E.D. Mich. Sept. 4, 2014)

4839-7447-8705, v. 8

## **INTRODUCTION**

Radiant seeks a preliminary injunction to prevent the continued irreparable harm inflicted by Defendant Chad Furstenau ("Furstenau), a former high-ranking and trusted employee of Plaintiff Radiant Global Logistics ("Radiant") following his abrupt resignation, solicitation and hire of three key employees and formation of a directly competing business with Defendant BTX Air Express of Detroit ("BTX"). Radiant operates in the highly competitive logistics and supply chain management industry. Until Furstenau resigned abruptly on August 24, 2018, he was the General Manager and highest-ranking employee at Radiant's Michigan facility. Defendant left Radiant and immediately assumed the same role of manager of the newly formed Detroit based operations of BTX, one of Radiant's direct competitors in other areas of the country.

Furstenau's sudden resignation was preceded by his systematic theft of Radiant's highly confidential and proprietary information. Radiant has discovered that before he resigned, Furstenau forwarded Radiant's trade secret and highly confidential and proprietary information regarding Radiant's business and customers to his personal email account. Before his departure, Furstenau unlawfully recruited three key Radiant employees with intimate knowledge of  Radiant's customers for employment at the newly established Detroit operations of BTX.

Immediately after joining BTX, Furstenau and the former Radiant employees began calling on Radiant's customers to leverage their knowledge of Radiant's confidential information and operational practices in the Detroit market. Defendants are attempting to convert the business that was developed by Radiant over many years in the Detroit market to BTX's newly created Detroit area business in order to replicate Radiant's operational model to BTX's competitive advantage. Defendants' actions have caused and will continue to cause harm to Radiant for which money damages are insufficient. To prevent further irreparable harm to Radiant's business and loss of its customer good will, Radiant seeks a preliminary injunction against Defendants in the form attached hereto as **Exhibit A** based on Furstenau's breaches of his fiduciary and other duties, and Defendants' misappropriation and use of Radiant's trade secrets and confidential and proprietary information.

## STATEMENT OF FACTS

### A. Radiant's Business and It's Detroit Market

Radiant operates as a third-party logistics and supply chain management company. It provides multi-modal transportation and logistics services to companies in numerous industry verticals including but not limited to the consumer goods, food and beverage, manufacturing, automotive, trade-show and retail sectors.  Radiant has a network of operations across North America, including a significant presence in the Detroit market. Radiant's primary business operations involve arranging third-

2

party shipments of materials, products, equipment and other goods that are larger than shipments handled by integrated carriers of primarily small parcels, including arranging and monitoring all aspects of material flow activity utilizing information technology systems.

Radiant's Detroit facility services customers in the Michigan market, with a significant emphasis on the automotive industry. Furstenau held the senior-most position of General Manager and Director of Automotive at Radiant's Detroit facility, located in Taylor, Michigan. In that position, Furstenau interfaced directly with senior members of Radiant's leadership on a regular basis. Furstenau's job duties included managing the Detroit facility and all the employees who worked there, overseeing customer relationships and sales initiatives, tracking revenues and costs, and the implementation of corporate initiatives.

By virtue of his position, job duties and interactions with senior management, Furstenau had access to Radiant's trade secrets, know-how, intellectual property, and other confidential data, including virtually all information concerning Radiant's operations, pricing, customers, and suppliers in the Detroit market. This also included access to the budgets, financial statements, and employee performance and compensation data for Radiant's Detroit facility.

The logistics and supply chain management industry is highly competitive. Logistics companies market similar services and therefore must work hard to

3

maintain ongoing customer relationships based on competitive pricing, internal efficiencies, service and reliability.  Enhancements to a logistics company's internal servicing/routing software and processes, in particular, can have a significant impact on pricing, customer relationships and revenue growth because customers seek suppliers who can provide real-time service and assurances of timely shipments.

**B. BTX is a Competitor of Radiant that did not Operate in Detroit Prior to Defendants' Misappropriation**

On a national level, the owner and affiliated companies of BTX are direct competitors of Radiant and its related companies.  However, immediately prior to hiring Furstenau and three other former Radiant employees, BTX did not have operations and did not compete with Radiant in the Detroit market.  Upon information and belief, in late July of 2018, BTX was formed by its sole member, Bacarella Transportation Services, Inc., a Connecticut company, in anticipation of the hiring of Furstenau and the other former Radiant employees who were to be recruited by Furstenau to leave their employment with Radiant and join BTX.  Thus, Radiant believes that Furstenau and BTX had previously negotiated and planned for Furstenau to recruit key employees from Radiant, resign from Radiant and immediately begin employment with BTX as the manager of its newly established business in Southeastern Michigan.

**C. Furstenau's Breaches of Fiduciary Duties and Misappropriation and Use of Radiant's Trade Secrets**

4

Radiant has an Employee Handbook that contains important provisions and rules designed, among other things, to safeguard the company's confidential and/or trade secret information. Furstenau was provided a copy of the Handbook and acknowledged his obligations under its terms. The Handbook has a section entitled, "Computer, Internet & Software Policy" ("Policy"), which was expressly implemented to help "minimize the potential exposure to the Company from damages which may result from the unauthorized use of the Company's resources . . . [including] the loss of sensitive or company confidential data." *Id.*, at p. 18 ("User Responsibilities").  Excerpts from the Handbook are attached as **Exhibit B**.

Under the Policy, users have a duty to "act lawfully" in relation to their use of computer systems, to keep all IT resources secure, "not to compromise the security of any IT resource," and to "keep confidential all Company data and all information provided by the Company by other entities unless information has been approved for external publication." *Id.*, p. 19. Put simply, each user "is bound by [an] obligation not to disclose Radiant Logistics' business information unless authorized to do so." *Id.*, p. 19.

Furstenau was a "user" under the Policy and expressly acknowledged his receipt of, and agreement to, the terms of the Policy, which was a condition of his continued employment. He signed a verification on February 1, 2011, attached as **Exhibit C**. However, despite his agreement, Furstenau violated the Policy, as well

5

as his fiduciary duties and position of trust and confidence with Radiant, by taking Radiant's confidential information and soliciting other employees to leave Radiant.

Specifically, Radiant discovered that while still employed by Radiant and in apparent preparation for his departure and commencement of work for BTX, Furstenau forwarded to his personal email account highly confidential information regarding, (a) Radiant's revenues, (b) customer lists and rate information, (c) shipment by shipment details as to the revenues and margins from various customer accounts across certain routes, (d) information regarding Radiant's internal implementation of new enterprise management software and processes designed to allow Radiant to be more efficient and competitive in the marketplace, (e) Radiant's proprietary operational practices of crafting carrier, routing and pricing solutions for customers which was based on many years of accumulating the historical volumes and shipping patterns of particular customers, identifying carriers/suppliers who can provide optimal routing, negotiating pricing with those preferred carriers/suppliers and configuring/combining loads, routing, carriers, and pricing so that the customer is provided an optimal transportation solution ("Customer Solutions"), and (f) information regarding skills, performance and compensation of all Radiant

6

employees. Collectively, the Customer Solutions and other confidential information is referred to as Radiant's "Confidential Information."

A forensic analysis of Furstenau's work computer at Radiant confirmed he sent multiple emails to his personal email account in the months preceding his resignation and deleted files showing his undisclosed interest in BTX while still employed at Radiant, including a document titled "BTX Freight Business Office 7_30_18.pdf." Examples of the Confidential Information that Furstenau sent to his "@comcast.net" account are as follows:

a) A highly confidential spreadsheet containing a detailed analysis of all Radiant's customers throughout the United States for the prior 12 months, including the identity of the customer, pricing, revenue, origin and destination of the shipment, etc.

b) A highly confidential spreadsheet containing the identity and compensation for all employees in the Detroit office.

c) An email titled "Follow up to our call," from Radiant organization's founder and CEO to Furstenau, which contained an Excel spreadsheet file titled "2017-12 R63DTW Customer Analysis.xlxs." This file: (i) lists every customer in the Detroit market, with monthly data regarding revenues, gross margins, and margin rates, and (ii) identifies Radiant's top customers and top sales representatives in the market, with revenue and gross margin trends on a monthly basis. This same email also contained the qualitative assessment of the CEO as to the status of an internal software and process-improvement roll-out, and the company's plans to implement the changes to specific customer accounts.

d) An email titled "FYI 19 DTW Budget," containing highly sensitive financial data and projections for the Detroit facility, along with compensation information for the employees.

7

Furstenau was not authorized to send this information to an email account outside of the Radiant's IT systems, nor to access the Confidential Information for any purpose unrelated to Radiant's business. The Customer Solutions and other Confidential Information of Radiant that Furstenau sent to his personal email was information that gives Radiant a competitive advantage because it is not known by its competitors. Such information would be highly valuable to Radiant's competitors, especially a newly formed operation in a market where the competitor did not previously exist, such as BTX in Detroit

### D. Furstenau's Recruitment of Key Strategic Employees of Radiant

To best leverage Defendants' misappropriation and use of Radiant's trade secrets at BTX's new Detroit location, at the time of Furstenau's resignation from Radiant, he successfully solicited three other key employees of Radiant to join him at BTX - Christopher Higgins, Angela Dupree, and Ben Watkins. Each of these employees held key strategic positions within Radiant's Detroit based operations and possessed knowledge of Radiant's Confidential Information regarding the identity of customers, the historical volumes and shipping patterns of customers, the identity and pricing of carriers/suppliers, pricing, and the optimal routing configurations and the carriers who can fulfill them. As a result, the employees were of strategic value to Furstenau and BTX in their effort to replicate the practices and business model of Radiant and convert Radiant's customer relationships to BTX.

First, Mr. Higgins was *the* key employee in the Detroit facility who understood and was responsible for the process of obtaining and handling work from one of Radiant's largest customers. Through his relationship with XPO Logistic, which provided Radiant access to a "bid board" to connect to job opportunities, Radiant has been successful in obtaining Ford Motor Company ("Ford") work. Over time, Radiant successfully maintained Ford work through its reputation and history as an effective logistics provider, its experience with this customer, and most importantly, based on the methods it has developed to effectively design the logistics/routing and pricing in a timely and highly competitive way. Higgins was responsible for securing this work, handling the bid process and creating the solutions for a given job. He knows better than anyone how to leverage Radiant's know-how, processes and pricing with respect to this important customer. Second, Ms. Dupree also has knowledge of quoting, customer relationships, and a deep understanding of the "nuts and bolts" of how Radiant operated within the Detroit market and with particular customers. Third, Mr. Watkins, who was embedded at a one of Radiant's largest customers located in Tennessee and was instrumental in Radiant's ongoing success with that customer, had complete access to the customer and all information regarding that customer and Radiant's business with it. In fact, Watkins is the subject of a confidentiality and post-employment customer and employee non-solicitation agreement that precludes him from calling upon or doing

9

business with any Radiant customers after his employment terminated. BTX is aware of and possesses a copy of that agreement.

As General Manager, Furstenau was uniquely suited to recruit these individuals from Radiant. He had knowledge of their skills, duties and performance, and had unfettered access to their employee files and compensation information. Upon information and belief, Furstenau solicited these individuals to leave Radiant and join him at BTX while he was still employed at Radiant. Furstenau did so to further the scheme developed by BTX and Furstenau to replicate the same business practices and model used at Radiant, and to maximize the ability to leverage Furstenau's misappropriation of Radiant's Confidential Information, for the benefit of BTX and himself.

Indeed, upon joining BTX, Furstenau and these other former Radiant employees, immediately began calling on Radiant's customers using as leverage the former employees' knowledge of Radiant's confidential information and operational practices in the Detroit market to entice the customers and business to BTX. They also solicited the transportation suppliers developed by Radiant over many years to begin providing transportation services to BTX to further their efforts to convert the relationships and business that Radiant has with its customers to BTX.

It is apparent to Radiant, that the formation of BTX and resignation of Furstenau and the three other former Radiant employees was orchestrated so that

10

their resignation would be immediately followed by their active employment at BTX and the solicitation of Radiant's customers. Defendants' acquisition and use of Radiant's Customer Solutions and/or Confidential Information, gives BTX an unfair competitive advantage without paying fair consideration or incurring the time and expense of independent development. The information regarding Customer Solutions in particular would enable a competitor such as BTX to develop pricing and routing strategies identical to those of Radiant and approach Radiant's customers with proposals that duplicate the proposals of Radiant that have been developed based on many years of cultivating knowledge of and relationships with transportation suppliers and customers, and creating routing methods that are the most optimal and cost efficient for these particular customers.

Radiant is especially concerned that Defendants intend to continue to use Radiant's Customer Solutions and Confidential Information to Radiant's detriment because, Furstenau misappropriated Radiant's Confidential Information and, since leaving Radiant, Furstenau and the other former Radiant employees he unlawfully recruited and hired have assumed the same or nearly identical positions at BTX and have proceeded to solicit multiple Radiant customers and transportation suppliers in an effort to convert those customers away from Radiant and for the benefit of BTX. Thus, Radiant has been irreparably harmed by Defendants' actions and will continue to be irreparably harmed unless this Court grants Radiant injunctive relief.

11

## ARGUMENT

### I.    Standard of Review

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834, 68 L. Ed. 2d 175 (1981)). "Given this limited purpose, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Id.* (quoting *Univ. of Texas, supra*) (internal quotation marks omitted). Accordingly, a party is not required to prove its case in full at a preliminary injunction hearing." *Id.*

"Four factors guide the decision to grant a preliminary injunction: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017)(quoting *Bays v. City of Fairborn*, 668 F.3d 814, 817–18 (6th Cir. 2012))(internal quotation marks omitted). "These are factors to be balanced not prerequisites that must be met." *Hamad v. Woodcrest Condo. Ass'n.*, 328 F.3d 224, 230 (6th Cir. 2003). *See also Golden v. Kelsey–Hayes*, 73 F.3d, 648 653 (6th Cir. 1996)("None of these factors, standing

12

alone, is a prerequisite to relief; rather the court should balance them."). The ultimate decision to grant an injunction is within the sound discretion of the district court. *Kelly Servs., Inc. v. Noretto*, 495 F.Supp.2d 645, 655 (E.D. Mich. 2007).

The circumstances here satisfy all four factors for this Court to enjoin Defendants from continuing to use Radiant's Customer Solutions and other Confidential Information and prevent further irreparable harm to Radiant and its business.

## II.    The Court Should Grant Radiant's Requested Injunctive Relief

### A. Radiant has a strong likelihood of success on the merits

Radiant "is not required to prove [its] case in full" in order to establish that it is entitled to an injunction. *See, e.g.*, *Tenke*, 511 F.3d at 542. Rather, "it ordinarily is sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *J. Rettenmaier USA LP v. Bodner*, 2008 WL 2704862, *7 (W.D. Mich. July 9, 2008) (citing *Tenke*). Radiant easily carries this burden here, and an injunction is warranted at least in relation to Radiant's claims against Furstenau for breach of fiduciary duty and misappropriation of trade secrets for the benefit of the Defendants.

As to the fiduciary duty claim, Radiant ultimately will need to show "(1) the existence of a fiduciary duty, (2) a breach of that duty, (3) proximately causing

13

damages." *Stryker Corp. v. Ridgeway*, 2015 WL 8759220, *3 (W.D.Mich. Dec. 14, 2015). "Under Michigan law, 'a fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one on the judgment and advice of another.'" *Petroleum Enhancer, LLC v. Woodward*, 690 F.3d 757, 765–66 (6th Cir.2012)(quoting *Teadt v. Lutheran Church Mo. Synod*, 237 Mich.App. 567, 580–81, 603 N.W.2d 816 (1999)).

Furstenau was the "General Manager" and senior-most person in the Detroit facility with significant authority and discretion. He had access to all the facility's confidential information, oversaw all the employees, customer relations and sales initiative; tracked revenues and costs; and implemented corporate initiatives. Thus, his title, role, and job duties fit exactly within the ambit of a fiduciary and agent. *See Stryker Corp.*, 2015 WL 8759220, at *5 (denying dismissal of fiduciary duty claim against a sale representative given his relationship to the principal, notwithstanding the "general rule" that regular employees are not fiduciaries); *Nedschroef Detroit Corp. v. Bemas Enterprs., LLC*, 106 F.Supp.3d 874 (E.D. Mich. 2015)(business unit manager and project manager considered fiduciaries in case involving unfair competition and misappropriation); *American Furukaw, Inc. v. Hossain*, 2016 WL 3444079, *7 (E.D. Mich., June 23, 2016)(Senior Production Manager with access to his former employer's intellectual property and confidential information considered a fiduciary).

4839-7447-8705, v. 8

A fiduciary has a duty to act for the benefit of the principal regarding matters within the scope of the relationship. *Petroleum Enhancer*, 690 F.3d at 766. Furstenau breached those duties. For months while employed with Radiant, Furstenau sent Radiant's Confidential Information to his personal email account and is using the Confidential Information for the benefit of his new employer, BTX, a competitor of Radiant. In addition, while employed with Radiant, Furstenau used his position and knowledge of employee performance and compensation to solicit three key employees to leave Radiant and join him at BTX. Furstenau took Radiant's Confidential Information and solicited its employees to further his scheme to replicate the same business practices and model used at Radiant for his benefit and BTX's. Furstenau was well aware of the information, systems, and employees that were needed to service Radiant's customers. He carefully and intentionally packaged together these pieces to unfairly compete with and harm Radiant on behalf of BTX.

An injunction is warranted pursuant to Radiant's misappropriation claim as well. The Michigan's Uniform Trade Secret Act ("MUTSA"), MCL §445.1901 *et seq.*, provides Radiant with a statutory remedy against Defendants for their improper use and disclosure of Radiant's trade secrets, and Radiant has a substantial likelihood of succeeding on its claim under the Act.[1] The Court does not need to find that such

---

[1] The basic elements of this claim are as follows: (1) the existence of a trade secret, (2) the defendant's acquisition of it, and (3) defendant's unauthorized use of it. *See* MCL 445.1901 et seq. ("MUTSA"); *Aerospace AM., Inc. v. Abatement Techs.*, 738 F.Supp. 1061, 1069 (E.D. Mich.

a claim will be definitively proven at this stage; the very reason for having a trade secret is defeated if someone can abscond with it and make it public, and so action must be taken quickly and decisively where there is risk of disclosure. The MUTSA therefore, expressly provides that "[a]ctual *or threatened* misappropriation may be enjoined." MCL §445.1903(1) (emphasis added).

Radiant has more than satisfied its preliminary burden in this case. The Customer Solutions and other Confidential Information taken and used by Defendants contain valuable trade secrets of Radiant. (See Facts Section, *supra*.) As a threshold matter, there can be no dispute that this material at issue may constitute a trade secret. *See* MCL §445.1902(d)(broadly defining protectable "trade secret" as information that "[d]erives independent economic value, actual or potential, from not being generally known [and] not being readily ascertainable by proper means by [others] who can obtain economic value from its disclosure or use[,]" and that is subject to "reasonable" efforts to "maintain its secrecy."); 18 U.S.C. §1839(3) (providing same definition); *Superior Consultant Co. v. Bailey*, 2000 WL 1279161, *7 (E.D. Mich. Aug. 22, 2000)(customer list may constitute a trade secret entitled to protection from misappropriation); *Giasson Aerospace Science, Inc. v. RCO Engineering, Inc.*, 680 F.Supp.2d 830, 844 (E.D. Mich. 2010)(finding that a jury

---

1990).  The elements of a claim under the federal Defend of Trade Secrets Act are substantially in accord with the Uniform Trade Secrets Act, upon which MUTSA is based. Compare definition of misappropriation under MCL §445.1902(b), UTSA §1(2), and DTSA §1839(5).

could conclude that "'vendor product and pricing information" constituted a trade secret"). And, it is not simply the raw data about Radiant's customers that constitute the trade secrets; knowledge developed by an employee about how to address a particular customer's peculiar needs, or having developed solution to specialized needs, can constitute a trade secret. *See Hayes-Albion v. Kuberski*, 421 Mich. 170, 184-85, 364 N.W.2d 609 (1984).

As noted in the Facts Section, Radiant has definitive and forensic proof that Furstenau misappropriated these trade secrets when he sent Radiant's Confidential Information to his personal email address without authorization and in violation of his duty to maintain the document's secrecy. *See* MCL §445.1902(a)-(b) ("misappropriation" occurs by "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means[,]" *e.g.*, through "breach [of] a duty to maintain secrecy[.]"); 18 U.S.C. §1839(5)(providing same definitions of "misappropriation"). Furstenau doubled-down on his violation by cherry-picking some of the key employees who could best leverage the misappropriation. *See Nedschroef*, 106 F.Supp.3d at 886 (finding that the undisputed evidence suggests defendants acquired the plaintiffs' trade secrets knowing that those trade secrets were acquired through breach of a duty to maintain their secrecy, or at minimum, that the defendants' use of plaintiffs' proprietary drawings was unauthorized and not for a use that served the plaintiffs); *see also*

*MLive Media Grp. v. Webber*, 2014 WL 4374376 (E.D. Mich. Sept. 4, 2014)(substantial likelihood of prevailing on merits shown when departing employee copied data concerning his employer's customer lists and growth plans onto a thumb drive before leaving and expressed the intent to the use the material for the benefit of his new employer). Furstenau's actions were clearly improper and in violation of his fiduciary duties and MUTSA.

Likewise, BTX's *use* of Radiant's Confidential Information that it knows was taken by Furstenau through improper means also constitutes misappropriation that can and should be enjoined. *See* MCL §445.1902(a)-(b)(ii) and 18 U.S.C. §1839(3). In fact, BTX is using or relying on Furstenau, Watkins and the other former employees to solicit Radiant customers *knowing* they have knowledge of the trade secrets and knowing Watkins is the subject of a confidentiality and post-employment customer and employee non-solicitation agreement that prohibits him from soliciting any Radiant customers. This is further evidence of BTX's misappropriation of Radiant's Confidential Information, *and* evidence of BTX's tortious interference with Radiant's agreement with Watkins that prohibited him from soliciting or doing business with Radiant's customers.

Accordingly, Radiant has established a likelihood of success on the merits of its claims for breach of fiduciary duty against Furstenau and misappropriation of

18

trade secrets against Defendants for the Court to issue the requested preliminary injunction to protect Radiant from further harm.

**B.     Radiant would suffer irreparable injury absent the requested relief**

This factor easily weighs in Radiant's favor. It is black letter law that a business may be irreparably harmed by its employee's misappropriation of its confidential information and trade secrets. *See, e.g., Red D Freight, Inc. v. Sexton*, 2017 WL 4818898, at *5 (Mich. Ct. App. Oct. 24, 2017)(alleged "behavior to wrongfully steal plaintiff's clients" is the "type of behavior [that] can result in the loss of customer goodwill, which often amounts to irreparable injury."). Moreover, the Sixth Circuit has held that the loss of goodwill "often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." *Basicomputer*, 973 F2d 507, 511 (6th Cir. 1992). *See also Michigan Bell Tel. Co. v. Engler*, 257 F.3d 587, 599 (6th Cir. 2001).

Here, in the absence of a preliminary injunction, Radiant will continue to suffer irreparable harm including but not limited to the loss of confidentiality of its Confidential Information, the loss of its advantageous competitive position in the logistics and supply chain management industry, the loss of customer relationships and goodwill, and the loss of key employees in its Detroit operations. Such losses are not compensable by monetary damages. *See Kelly*, 495 F.Supp.2d at 659 (holding that the defendant's expansive knowledge of Kelly's business systems and

19

operations will cause loss of Kelly's customer goodwill). *See also Lowry Computer Prods. v. Head*, 984 F. Supp. 1111, 1116 (E.D. Mich. 1997)(the loss of customer goodwill and weakened ability to fairly compete from disclosure of trade secrets does establish irreparable injury). Further, this Court may enjoin the actual or threatened misappropriation by Defendants under MCL §445.1903(1).

The defendant in *Kelly, supra*, misappropriated similar confidential information and trade secrets of Kelly, including customer lists, operational procedures, marketing strategies, and regional customer pricing and profit margins. *Id.* at 649. The defendant had also acquired "expansive knowledge" concerning Kelly's customers' preferences and service needs and had extensive contact with two of Kelly's largest and most critical accounts. *Id.* Based on the defendant's knowledge of Kelly's business and operations, the court found that the loss of customer goodwill that Kelly had developed was inevitable absent a preliminary injunction. *Id.* at 559. *See also Basicomputer*, 973 F.3d at 511-12 (affirming a preliminary injunction based on the defendants absconding with Basic's confidential customer information including pricing information that could be used to underbid Basic, joining Basic's competitor, and immediately contacting Basic's customers, because Basic would suffer competitive injury and loss of customer goodwill without injunctive relief).

20

Like the defendants in these cases, Furstenau's misappropriation of Radiant's Confidential Information and BTX's use of that information in its newly formed Detroit based business, will result in the loss of Radiant's competitive advantage and the loss of customer goodwill. Indeed, Furstenau and BTX are bound to use and benefit from the Confidential Information given Furstenau's duplicitous conduct for the benefit of BTX, which will have significant adverse impact on Radiant and its business. *See Kelly*, 495 F.Supp.2d at 659 (finding it is "entirely unreasonable" to expect the defendant to work for a direct competitor in a similar position and not use the "intimate knowledge of Kelly's business operations"); *see also Lowry*, 984 F.Supp. at 1116 (finding the confidential information, including customer lists, profit margins and pricing the defendant possessed could be divulged during defendant's employment with Lowry's direct competitor and cause irreparable harm in the loss of customers it spent years and significant resources obtaining).

Radiant believes that the only customers Defendants are targeting for BTX's new Detroit business are ***Radiant*** customers. Courts have issued injunctive relief to enjoin the use of trade secret information to solicit customers of a former employer even in the absence of restrictive covenants. *MLive*, 2014 WL 4374376, involved a similarly positioned employee that took confidential information to the plaintiff's largest competitor. Webber was MLive's account executive who had intimate knowledge of MLive's product offerings and customers, including customer pricing, budgets, margins, and sales plans and forecasts. This information was confidential,

21

and MLive restricted access to it and required employees to comply with its policy restricting the use and distribution of such information. *Id.* at *1. Webber did not have non-solicitation or confidentiality agreements with MLive. After she was terminated, MLive discovered on her work mobile phone, text messages to MLive's largest competitor, Gannett, that she had copied all her data to a USB device in order to shift her clients to Gannett. *Id.* at *2. A forensic analysis of her work computer confirmed she downloaded numerous MLive files containing customer information and used two USB devices and a drop box to store work related files. *Id.*

Despite the absence of a non-solicitation agreement, this Court enjoined Webber from soliciting or servicing any customers or prospective customers about whom she had acquired confidential knowledge while employed by MLive. The injunction also extended to any other person or entity, including Gannett, Webber's current employer. (A copy of the Order For Preliminary Injunction entered in MLive is attached as **Exhibit D**.) *See, e.g.*, *Nedschroef*, 106 F.Supp.3d 874 (granting a permanent injunction enjoining defendants from unfairly competing against the plaintiffs in the absence of non-compete agreements); *Actuator v. Chinavare*, 2011 WL 6004068, at *3-5 (Mich. Ct. App. Dec. 1, 2011)(entering a permanent injunction enjoining the defendant from working with a competitor of his former employer for three years in the absence of a non-compete agreement based on the defendant's ***and competitor's*** willingness to use and/or disseminate the former employer's trade-secret information).

22

Radiant has alleged an incalculable harm that will continue due to Defendants' actual and threatened use of Radiant's Confidential Information and Furstenau's breaches of his fiduciary duties that warrant injunctive relief. *See Brake Parts, Inc v. Lewis*, 443 Fed. Appx. 27, 32 (CA 6, 2011) (noting that the existence of non-disclosure and non-competition agreements "has little bearing on the central issue: the incalculable harm alleged …in terms of lost market position, goodwill, and research incentive" that the defendants' ongoing misdeeds will cause).

**C.    A preliminary injunction will only affect the parties to this litigation**

The third factor to be considered is whether an injunction would harm others. "This factor is most commonly evaluated in terms of the balance of hardship between the parties." *Superior Consulting Co., Inc. v. Walling*, 851 F.Supp. 839, 848 (E.D. Mich. 1994). In contrast to the irreparable harm to Radiant's business, including the loss of its Confidential Information and its customer goodwill, injunctive relief will only affect the parties to the litigation. Radiant is only requesting the Court to enjoin Furstenau from further violating his fiduciary duties and to comply with Radiant's Handbook. These are all acts that Furstenau was required to do as a fiduciary to Radiant and pursuant to the terms of his employment. Thus, Furstenau cannot complain that an injunction requiring him to comply with terms, to which he voluntarily agreed, is harmful or burdensome to him. *See Kelly*, 495 F.Supp.2d at 660.

Further, a preliminary injunction will maintain the status quo by requiring Defendants to return Radiant's Customer Solutions and Confidential Information

23

that they have wrongfully diverted, cease using such information to unfairly compete with Radiant, end further solicitation of Radiant's customers and employees, and enjoin Defendants from profiting from their wrongful conduct. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Ran*, 67 F.Supp.2d 764, 780 (E.D. Mich. 1999). The balance of hardships clearly weighs in Radiant's favor.

**D.    The public interest would be served by issuance of an injunction**

Finally, an injunction undoubtedly furthers the public interest. The public has an interest in protecting trade secrets based on the enactment of MUTSA and the Defend of Trade of Secrets Act. *See Henkel Corp. v. Cox*, 386 F.Supp.2d 898, 904 (E.D. Mich. 2005)(recognizing the public interest in protecting confidential information based on the MUTSA provision for injunctive relief in trade secret cases); *Kelly*, 495 F. Supp. 2d at 660-61 (same); *Superior Consulting*, 851 F.Supp. at 848 (the public interests in protecting confidential information and enforcing valid employment contract weighs in favor of issuing a preliminary injunction). And, in this case, Furstenau signed the Handbook, promising to maintain the confidentiality of Radiant's data. Enforcing agreements likewise is in the public interest. *Tenke*, 511 F.3d at 551 ("[e]nforcement of contractual duties is in the public interest."). Non-disclosure agreements or contracts that protect the confidentiality of information are no exception to the rule. *See Bodner*, 2008 WL 2704862, at \*12.

## CONCLUSION

For these reasons, Plaintiff respectfully requests entry of an order:

a. Enjoining and prohibiting Furstenau and anyone acting in concert with him (including the three former Radiant employees hired by BTX since Furstenau left Radiant), are enjoined and prohibited from directly or indirectly calling upon, soliciting or conducting business with any entity that was a customer of Radiant during the last 12 months that Furstenau was employed Radiant;

b. Enjoining and prohibiting Defendants and anyone acting in concert with them are enjoined and prohibited from using, disclosing, sharing, copying, or accessing any Radiant confidential information, which includes Radiant information and data as to the following: (i) customer lists and rate information, (ii) shipment by shipment details as to the revenues and margins from various customer accounts across certain routes, (iii) information regarding Radiant's internal implementation of new enterprise management software and processes, (iv) Radiant's proprietary operational practices of crafting carrier, routing and pricing solutions for customers, (v) information regarding skills, performance and compensation of Radiant employees, and (vi) Radiant revenue and profitability data

c. Enjoining and prohibiting Furstenau and anyone acting in concert with him (including the three former Radiant employees hired by BTX since Furstenau left Radiant), are enjoined and prohibited from directly or indirectly soliciting, recruiting or hiring any additional Radiant employees; and

d. Ordering Furstenau to make his personal computer[s], cell phone, portable storage devices and personal email and cell phone account(s) available for imaging and/or analysis.

Dated:     September 14, 2018          HICKEY HAUCK BISHOFF & JEFFERS, PLLC

By:   */s/ Patrick F. Hickey*
      Patrick F. Hickey (P36648)
      Benjamin W. Jeffers (P57161)
      Stefanie R. Reagan (P80334)

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 14, 2018, my assistant electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

By:    */s/ Patrick F. Hickey*
Patrick F. Hickey (P36648)