UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RADIANT GLOBAL LOGISTICS,
INC.,

              Plaintiff,                No. 18-12783

v.                              District Judge Paul D. Borman
                                  Magistrate Judge R. Steven Whalen

BTX AIR EXPRESS OF DETROIT,
LLC,

              Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S
## MOTION TO CONDUCT ADDITIONAL DEPOSITIONS [ECF No. 89]

Before the Court is Defendant's Motion for Leave to Conduct Additional

Depositions [ECF No. 89], in which Defendant BTX Air Express of Detroit, LLC

("BTX"), which has already taken 11 lay depositions, seeks to depose four additional

witnesses.  For the reasons discussed below, the motion will be DENIED.

### I.    FACTUAL BACKGROUND

On September 7, 2018, Plaintiff Radiant Global Logistics, Inc. ("Radiant") filed its

six-count  complaint against BTX and Charles Furstenau, Jr. ("Furstenau"), which

includes claims of breach of fiduciary duty against Furstenau and misappropriation of

trade secrets against Furstenau and BTX.[1] On October 11, 2018, BTX and Furstenau,

respectively, filed their answers and affirmative defenses [ECF No. 25 and ECF No. 26].

On November 14, 2018, Furstenau file a counterclaim that included a claim of breach of

---

[1] The Court's Opinion and Order Granting Plaintiff's Motion for Preliminary
Injunction [ECF No. 52, PageID.2715-2729] contains a detailed discussion of the factual
background of these claims, including evidentiary hearing testimony.

his employment agreement with BTX [ECF No. 31].  On February 20, 2019, following a two-day evidentiary hearing, the Court granted Radiant's motion for preliminary injunction, restraining Furstenau and all other former Radiant employees now employed by BTX from "soliciting business from, providing quotes to, or otherwise contacting" customers and carriers/agents "with which they conducted business during the last 12 months that they were employed by Plaintiff Radiant, for a period of six months from the date of entry of this Order." [ECF No. 52, PageID.2756].  The Sixth Circuit, finding that BTX's appeal of the preliminary injunctive order was moot because its six-month duration had expired, dismissed the appeal for lack of jurisdiction [ECF No. 90].

On August 16, 2019, the Court entered a scheduling order setting a discovery cut-off date of March 13, 2020 [ECF No. 78]. On February 21, 2020, the Court entered a stipulated order to extend discovery to May 8, 2020 [ECF No. 87].

To date, Defendants have taken a total of 11 depositions, excluding the deposition of Radiant's corporate representative.[2]  Four took place in Seattle, Washington, and one took place in Nashville, Tennessee.  Defendants now seek to depose four additional witnesses: Renee Kiss, Dan Stegemoller, Angelo Nunez, and Matthew Sangsland. Radiant states that Kiss is located in Seattle; Stegemoller is located in Phoenix, Arizona; and Nunez is located in Newark, New Jersey.  Sangsland is a former Radiant employee, and Radiant states that his location is unknown at this time.

---

[2] Defendants took the following depositions of Radiant's corporate officers in Seattle: (1) Tim O'Brien, VP of Company Stores; (2) Bohn Crain, CEO; (3) Edward Joseph Bento, Chief Operations Officer; and (4) Mark Rowe, VP of Technology. In addition, the deposed the following Radiant Detroit personnel in Michigan: (1) William Sims, Detroit Station Manager; (2) Tyrell Sears (sales); (3) Adam Baker (operations). Finally, they deposed four non-Radiant employees: Maureen Englehart, Barbie Keiser, and Larry Ezzelle (joint customers of Radiant and BTX), and Richard Manner, a former executive at Stonepath.

## II.   LEGAL PRINCIPLES

Fed. R. Civ. P. 30(a)(2)(A)(i) provides:

"A party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2):

(A) if the parties have not stipulated to the deposition and:

(i) the deposition would result in more than 10 depositions being taken under this rule or Rule 31 by the plaintiffs, or by the defendants, or by the third-party defendants."

And Rule 26(b)(1) and (2) provide:

(1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

(2) Limitations on Frequency and Extent.

(A) When Permitted. By order, the court may alter the limits in these rules on the number of depositions and interrogatories or on the length of depositions under Rule 30. By order or local rule, the court may also limit the number of requests under Rule 36.

***

( C ) On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information sought by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the discovery in resolving the issues.

"Courts generally require a particularized showing of necessity from the party

requesting additional depositions for each additional deposition." *Visteon Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 2008 WL 251985, at *1 (E.D. Mich. Jan. 30, 2008).  In addition, "[t]he moving party must not only justify the depositions it seeks to take but also the depositions it has already taken." *E.E.O.C. v. Chrysler LLC*, 2008 WL 2622948, at *6 (E.D. Mich. July 2, 2008), citing *General Elec. Co. v. Indemnity Ins. Co.*, 2006 WL 1525970, at *2 (D.Conn. May 25, 2006).

The decision of whether to permit a party to take more than 10 depositions is entrusted to the Court's discretion. *See Ventura v. The Cincinnati Enquirer*, 396 F.3d 784, 789 (6th Cir. 2005), citing *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir.1993) (finding the scope of discovery within the discretion of the trial court).

## III.   DISCUSSION

The Defendants propose to take the depositions of the following four witnesses:

<u>Renee Kiss</u>.  Referring specifically to Ms. Kiss' emails, Defendants state that she was involved in bonus payment calculations to Furstenau, participated in efforts to hire a general manager in Detroit both before and after Fursentau resigned, and "assisted Tim O'Brien in drafting letters to employees who remained at Radiant Detroit after Furstenau's departure, presumably as a means of mitigating alleged damages."  ECF No. 89, PageID.3501.

<u>Dan Stegemoller</u>.  Again referring to emails, Defendants state that Stegemoller "identified an interviewee in February 2018 as a 'replacement' for Furstenau. ECF No. 89, PageID. 3501.

<u>Angelo Nunez</u>.  Apparently based on emails, Defendants state that Mr. Nunez "came to the Radiant Detroit station days after Furstenau's departure," and allegedly participated in efforts to mitigate Radiant's damages.  ECR No. 89, PageID.3502,

<u>Matthew Sangsland</u>.  Defendants state that "the emails reveal that [Sangsland] was prominently involved in calculating alleged damages related to the departure of Furstenau and other employees from the Radiant Detroit station."  ECR No. 89, Page ID.3502.

I find the Defendants' arguments for permitting these four addition witnesses unpersuasive.

First, Defendants complain that the sheer number of documents that Radiant produced prior to the four Seattle depositions precluded it from fully examining O'Brien, Crain, and Bento regarding whether Furstenau was owed additional bonuses, whether there were efforts to replace Furstenau in 2018, and whether Furstenau's complaints about a software system were legitimate.   The Defendants argue that they did not as a practical matter have sufficient time to review the large volume of discovery, including the emails of the four new witnesses, to use them at the Seattle depositions, and that their subsequent review revealed inconsistencies in the testimony of the Radiant executives. Defendants argue:

> "When the remainder of those documents were reviewed after the Seattle Depositions–in combination with the testimony from Crain, Bento, and O'Brien–Defendants realized that four additional depositions would be needed to properly identify and correct the false record put into evidence by Crain, Bento, and O'Brien."  ECF No. 89, PageID.3489.

However, the time line does not support Defendants' claim of surprise or inability to prepare.  BTX states that it noticed the Seattle depositions on August 6, 2019, "shortly after Plaintiff produced approximately 190,000 pages in June and July of 2019 in response to discovery requests from BTX Detroit and Furstenau." BTX states that it then received an additional 14,000 pages on September 1, 2019.  ECF No. 89, PageID.3487-3488.  No doubt, over 200,000 pages is a lot of material, but, knowing how much material had been produced,  BTX nevertheless chose the date for the depositions at the end of

September.[3]  And rather than reschedule, "Defendants continued forward and took the previously scheduled Seattle Depositions."  ECF No. 89, PageID.3488.[4]  Had they obtained even a relatively short continuance of the depositions, they could have examined the Seattle witnesses armed what they now claim was their post-deposition discovery of contradicting emails.

Secondly, the proposed testimony of the four new witnesses is not as important as the Defendants would have the Court believe.  Defendants offer two reasons in support of the relevance of these witnesses:

> " Defendants seek only to put critical emails and documents in front of additional corporate witnesses who are relevant because (1) they authored these critical documents and/or were involved in these events and (2) significant parts of the testimony from the Seattle Depositions appear to be false and therefore unreliable." ECF No. 89, PageID.3490.

In other words, Defendants need additional depositions not so much to acquire substantive evidence, but for impeachment purposes. But by virtue of the emails themselves, they already know the substance of what these new witnesses said, and if necessary have grist for cross-examination and impeachment at trial, where it will be the trier of fact, not Defendants' counsel, who will determine whether Radiant has put "false evidence" into the record.  In addition, Defendants have not availed themselves of other means to obtain additional information regarding these emails, such as interrogatories or

---

[3] Radiance points out that during expedited discovery in October of 2018, it produced 454 emails that Fustenau sent from his Radiant account to his personal account, adding, "These emails included emails with Kiss, Bento, and O'Brien regarding the amount and payment of Furstenau's bonuses.  Many of these emails are emails Defendants have now included in Exhibit E, Renee Kiss emails, in support of their motion. (*See* RDTW 196018-20, 197199, 201467-68, 201481-82, and 208540-41)." Thus, BTX had at least some of the relevant emails almost a year before the Seattle depositions.

[4] At this point in the proceedings, the discovery cut-off date was not until April 17, 2020, and was later extended to May 8, 2020.

affidavits. *See E.E.O.C. v. Chrysler LLC*, 2008 WL 2622948, at *6 (E.D. Mich. July 2, 2008)("With diligence, Plaintiff may have sought this additional information by other discovery methods or may have more narrowly tailored its discovery including depositions."). As Radiant points out, Defendants have already taken 11 (or 12) depositions, issued 25 interrogatories, and served 71 requests to produce documents. ECF No. 92, PageID.3803. They have had ample opportunity for discovery without the necessity of additional depositions.

Next, what about the 11 depositions the Defendants have already taken? It is relevant in a motion of this type to weigh the importance of those in relation to a party's request for additional depositions. *E.E.O.C. v. Chrysler LLC*, 2008 WL 2622948, at *6 Three of those depositions–Larry Ezzelle, Maureen Englehart and Barbie Keiser–were joint customers of Radiant and BTX. Underscoring their relative unimportance, the depositions of Englehart, Keiser, and another non-party, Rick Manner, each lasted under two hours. The depositions of the three customers regarding whether or not they had any exclusive agreement with Radiant or whether their relationship with BTX was influenced by Furstenau were at least to some extent cumulative.

Another important consideration, under Rules 26(b)(1) and 26(b)(2)( C ) is "whether the burden or expense of the proposed discovery outweighs its likely benefit." Three of the witnesses that Defendants seek to depose are located in Seattle, Washington, Phoenix, Arizona, and Newark, New Jersey, respectively, and would require Radiant's counsel to literally travel coast-to-coast for what Defendants opine will be short depositions about the content of emails. And their facile suggestion that the depositions could be held by video conference is unavailing. Where it is posited that the previously deposed corporate officers have given perjured testimony, and that the new depositions

will delve into documentary evidence, it would approach legal malpractice for Radiant's counsel to conduct those depositions remotely.

The factors listed in Rule 26(b)(2)( C ) are set forth in the disjunctive:

"On motion or on its own, the court *must* limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information sought by discovery in the action; *or* (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the discovery in resolving the issues."(Emphasis added).

The presence of any one of these factors would support the denial of a motion to allow additional depositions under Rule 30(a)(2)(A)(i) .  But here, all three factors are present.  I can say it no better than did Magistrate Judge Majzoub in *E.E.O.C. v. Chrysler LLC*, 2008 WL 2622948, at *6:

"Plaintiff has not adequately shown the necessity of the proposed additional depositions. Further, Plaintiff's participation in discovery to date does not evidence a well-thought out discovery plan. The Court can find no compelling circumstances or reason to allow Plaintiff to take more than the ten depositions allowed under Fed.R.Civ.P. 30(a)."

## IV.   CONCLUSION

For these reasons, Defendant's Motion for Leave to Conduct Additional Depositions [ECF No. 89] is DENIED.

IT IS SO ORDERED.

s/R. Steven Whalen
R. STEVEN WHALEN
United States Magistrate Judge

Dated: April 22, 2020

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was sent to parties of record on April 22, 2020 electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager